UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JARRELL NEAL** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 15-5390** |
| **DARREL VANNOY, WARDEN** | **SECTION: "G"(3)** |

### SUPPLEMENTAL ORDER[1]

On May 20, 2022, the Court granted a petition for a writ of habeas corpus filed by Petitioner Jarrell Neal ("Petitioner") based in part on the Supreme Court's holding in *Martinez v. Ryan*.[2] On May 23, 2022, the Supreme Court issued an opinion in *Shinn v. Ramirez*, holding that federal courts cannot consider new evidence in evaluating a claim under *Martinez* unless the stringent requirements of 28 U.S.C. § 2254(e)(2) are met.[3] Considering that Petitioner relied on new DNA evidence to support his *Martinez* claim and that neither party had ever raised the application of § 2254(e)(2) to the *Martinez* claim, the Court invited the parties to submit supplemental briefing on *Shinn*'s impact on the judgment in this case.[4] After reviewing both parties supplemental briefs, the Court confirms its original order and judgment granting relief based on the exhausted ineffective assistance of counsel claim. For the reasons explained below, under the facts and

---

[1] This Order supplements the Court's May 20, 2022 Order and Reasons granting habeas relief in light of the Supreme Court's subsequent holding in *Shinn v. Ramirez*. *See* Rec. Doc. 227. This Supplemental Order assumes familiarity with these proceedings and does not restate in detail the full background of this case. Additionally, this Supplemental Order does not restate all of the applicable law.

[2] *See* Rec. Doc. 227 (citing *Martinez v. Ryan*, 566 U.S. 1 (2012)).

[3] *Shinn v. Ramirez*, No. 20-1009, 2022 WL 1611786, at *3 (U.S. May 23, 2022).

[4] Rec. Doc. 229.

1

circumstances of the instant case, the law and justice require relief. The State shall set aside Petitioner's conviction and sentence. The State must release Petitioner from custody unless the State grants Petitioner a new trial within 120 days from the date of the May 20, 2022 Judgment.

In 2016, Petitioner, a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 from his conviction for two counts of first-degree murder and the sentence of death on each count.[5] Petitioner was convicted of murdering Greg Vickers and Fergus Robinson on March 31, 1998 at the home of Claudette Hurst in Metairie, Louisiana. The primary issue at Petitioner's trial was his identity as the shooter. Considering that Petitioner, his half-brother Zannie Neal, and his uncle Arthur Darby were apprehended by the police as they fled the scene, there was little dispute that the trio were involved in the commission of the offense and were each culpable to some extent. The defense sought to persuade the jury that Petitioner was the least culpable because he stayed in the car while his brother and uncle murdered the victims, whereas the State relied on the testimony of cooperating witness, Arthur Darby, to show that Petitioner was the shooter and thus the most culpable. In fact, the State's theory rested almost entirely on Darby's testimony, as Claudette Hurst, the only eyewitness to testify at Petitioner's trial, described the shooter as someone who seemed to match a physical description of Arthur Darby rather than Petitioner.[6] As the Louisiana Supreme Court recognized on direct appeal, the jury's assessment of Arthur Darby's credibility was critical to the State's case.[7]

---

[5] Rec. Doc. 4.

[6] *See State v. Neal*, 2000-0674, p. 10–12 (La. 6/29/01); 796 So. 2d 649, 658.

[7] *Id.* ("In the instant case, the jury heard Hurst's description of the offender and the witnesses' testimony regarding the defendant's and Darby's clothing and physique, but, nevertheless, accepted Darby's testimony

2

Despite the importance of Arthur Darby's testimony, it went largely unchallenged by defense counsel. Specifically, three pieces of evidence with clear impeachment value were not used to impeach Darby, nor were they offered into evidence during Petitioner's trial at all: (1) a serology report indicating the possible presence of blood on the shoes the Jefferson Parish Sheriff's Office collected from Arthur Darby on the night of the murder[8] (the "serology report"); (2) a forensic report showing that Petitioner's shoes[9] were excluded as the source of the bloody shoeprint found at the scene, whereas Zannie Neal's shoes[10] could not be excluded as the source (the "shoeprint analysis report"); and (3) an inconsistent prior statement of Darby from February 22, 1999, wherein Darby told the police that Petitioner did not have a gun when he exited the vehicle (the "February 22, 1999 statement"). Petitioner primarily argued that the State violated

---

implicating the defendant. The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing court may impinge on the 'fact finder's discretion only to the extent necessary to guarantee the fundamental due process of law.'").

[8] The Jefferson Parish Sheriff's Office chain of custody form indicated that item 13 was one "pair Black 'Nike Air' no size from subject Darby at CHNO." Rec. Doc. 137-1 at 4 (March 31, 1998 Chain of Custody Form). During the long history of this litigation, the State has repeatedly conceded that Arthur Darby's shoes were identified as item 13. *See, e.g.*, Rec. Doc. 12 at 14. The State also referred to item 13 as Arthur Darby's shoes during the state post-conviction proceedings. *See* State Rec., Vol. XVII of XXXIII, State's Memorandum in Opposition at 4, Oct. 15, 2012 ("[T]he same report documents the possible presence of blood on specimen #13. These are Darby's shoes.").

[9] The Jefferson Parish Sheriff's Office chain of custody form indicated that item 78 were two "black shoes, unk[nown] brand [and] size. Received from Det. M. Moscona, at 725 Maple Av. Harvey, La." Rec. Doc. 137-1 at 12 (April 2, 1998 Chain of Custody Form). The Jefferson Parish Sheriff's Office crime lab notes refer to item 78 in more detail as "one pair of black HONCHOS – Steel Toe work shoes from (Neal, Jarrell)." *Id.* at 19 (April 25, 1998 Crime Lab Report). During the long history of this litigation, the State has repeatedly conceded that Petitioner's shoes were identified as item 78. *See, e.g.*, Rec. Doc. 12 at 15. The State also referred to item 78 as Petitioner's shoes during the state post-conviction proceedings. *See* State Rec., Vol. XVII of XXXIII, State's Memorandum in Opposition at 4, Oct. 15, 2012 ("Specimen #78 is the pair of boots the defendant was wearing.").

[10] The Jefferson Parish Sheriff's Office chain of custody form indicated that item 27 was one "pair black Nike tennis shoes from sub Neal, Zannie." Rec. Doc. 137-1 at 5 (March 31, 1998 Chain of Custody Form). During the long history of this litigation, the State has repeatedly conceded that Zannie Neal's shoes were identified as item 27. *See, e.g.*, Rec. Doc. 12 at 14. The State also referred to item 27 as Zannie Neal's shoes during the state post-conviction proceedings. *See* State Rec., Vol. XVII of XXXIII, State's Memorandum in Opposition at 5, Oct. 15, 2012 ("This relates to a bloody shoe print found on the scene and that Zannie Neal could not be excluded as the source of this shoe print.").

*Brady v. Maryland*[11] by failing to disclose this evidence to the defense before trial.[12] Alternatively, if the evidence was disclosed to the defense, Petitioner asserted that his counsel was constitutionally ineffective under *Strickland v. Washington*[13] by failing to offer the evidence in his defense.[14]

On May 20, 2022, the Court issued an Order and Reasons ruling on Petitioner's *Brady* and ineffective assistance of counsel claims. The Court ruled on three discrete issues: (1) the Court held that Petitioner was not entitled to habeas relief on his exhausted *Brady* claim because he failed to present evidence to overcome the state court's factual finding that the serology report, the shoeprint analysis report, and the February 22, 1999 statement of Arthur Darby were disclosed to the defense; (2) the Court held that Petitioner was entitled to habeas relief on his exhausted ineffective assistance of counsel claim based on trial counsel's failure to review the forensic evidence and his failure to impeach the State's key witness—Arthur Darby—with the serology report, the shoeprint analysis report, and the February 22, 1999 statement; and (3) the Court held that Petitioner was entitled to habeas relief on the procedurally defaulted ineffective assistance of counsel claim under the Supreme Court's holding in *Martinez v. Ryan*[15] because both trial counsel

---

[11] 373 U.S. 83 (1963).

[12] Rec. Doc. 4 at 22–47.

[13] 466 U.S. 668 (1984).

[14] Rec. Doc. 4 at 24 ("Indeed, Arthur Darby's testimony was the only evidence that identified Jarrell Neal as the person who allegedly, with a[n AK-47] in hand, entered the scene of the crime, and, with specific intent, killed the victims. However, due to a combination of *Brady* violations, *Napue* violations, and the ineffectiveness of trial counsel, the jury rendered its verdicts without hearing critical evidence that Arthur Darby lacked credibility and that his self-interested testimony was plainly unreliable evidence."); *Id.* at 29 ("This blood evidence is, therefore, critical exculpatory and impeachment evidence, and defense counsel was ineffective in failing to test and present this evidence at Jarrell Neal's trial.").

[15] *Martinez*, 566 U.S. at 1.

and state post-conviction counsel were ineffective for failing to conduct DNA testing on the shoe recovered from Arthur Darby, which revealed that it was "approximately 100 quintillion times more likely [to have originated from victim] Greg Vickers than if the DNA originated from an unknown individual."[16]

Three days later, the Supreme Court decided *Shinn v. Ramirez*, holding that federal courts cannot consider new evidence in evaluating a claim under *Martinez* unless the stringent requirements of 28 U.S.C. § 2254(e)(2) are met.[17] The Supreme Court held that "under § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel."[18] The Court reasoned that "under § 2254(e)(2), a prisoner is 'at fault' even when state postconviction counsel is negligent [and so] a federal court may order an evidentiary hearing or otherwise expand the state-court record only if the prisoner can satisfy § 2254(e)(2)'s stringent requirements."[19] In other words, "when a federal habeas court convenes an evidentiary hearing

---

[16] *See* Rec. Doc. 227.

[17] *Shinn*, 2022 WL 1611786, at *3. Under § 2254(e)(2):

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
(A) the claim relies on—
    (i) a new rule of constitutional law, made retroactive to cases on collateral review
    by the Supreme Court, that was previously unavailable; or
    (ii) a factual predicate that could not have been previously discovered through the
    exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

[18] *Shinn*, 2022 WL 1611786, at *9.

[19] *Id.* at *10.

5

for any purpose, or otherwise admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied."[20] The Supreme Court also observed that "even if a prisoner overcomes all of these limits, he is never entitled to habeas relief. He must still 'persuade a federal habeas court that law and justice require [it].'"[21]

Considering that Petitioner relied on new DNA evidence to support his *Martinez* claim and that neither party had ever raised the application of § 2254(e)(2) to the *Martinez* claim, the Court invited the parties to submit supplemental briefing on *Shinn*'s impact on the judgment in this case.[22] The State submitted a supplemental brief on May 31, 2022.[23] The State raises three arguments in its supplemental brief: (1) the procedurally defaulted ineffective assistance of counsel claim should have been denied because the DNA testing was not presented in state court, Petitioner cannot show prejudice resulting from counsel's failure to investigate without the DNA testing, and Petitioner cannot satisfy the requirements of § 2254(e)(2); (2) "to the extent this Court relied on any supposed concessions by Respondent, during the course of federal habeas proceedings, that particular shoes were worn by particular suspects . . . this Court improperly expanded the state court record contrary to *Shinn v. Ramirez*"; and (3) in granting relief this Court did not separately hold "that law and justice require" relief, a finding that the State suggests is required under *Shinn*.[24]

---

[20] *Id.* at *12.

[21] *Id.* at *6 (quoting *Brown v. Davenport*, 142 S. Ct. 1510, 1520 (2022)).

[22] Rec. Doc. 229.

[23] Rec. Doc. 230.

[24] *Id.* at 8–9.

6

On June 7, 2022, Petitioner submitted a supplemental brief.[25] Petitioner concedes that *Shinn* "could impact" this Court's ruling on his *Martinez* claim because the DNA evidence was not submitted to the state courts, and Petitioner does not argue that the requirements of § 2254(e)(2) are satisfied in this case.[26] Nevertheless, Petitioner asserts that the Court need not resolve this issue because *Shinn* does not impact this Court's ruling on his exhausted ineffective assistance of counsel claim.[27] Addressing the State's argument that the Court "expanded the state court record" when it referenced the State's multiple concessions in federal habeas pleadings that particular shoes were worn by particular suspects, Petitioner notes that throughout direct appeal and the state post-conviction proceedings, the State identified item 13 as Arthur Darby's shoe.[28] Finally, to the extent that *Shinn* requires the Court to make a separate finding that "law and justice" require relief, Petitioner submits that such a finding "was inherently incorporated in this Court's seventy-four-page opinion examining the facts in detail and thoroughly applying the governing law to the facts, before ultimately granting relief."[29] Petitioner submits that *Shinn* does not require the Court to make an explicit finding on this issue, but out of an abundance of caution the Court could explicitly state that "law and justice require relief."[30]

The parties appear to agree that following *Shinn*, the Court could not consider the DNA

---

[25] Rec. Doc. 231.

[26] *Id.* at 14–15.

[27] *Id.* at 11–14.

[28] *Id.* at 15.

[29] *Id.* at 16.

[30] *Id.* at 17.

7

testing performed on the shoes recovered from Arthur Darby because that evidence was not presented to the state courts and because § 2254(e)(2) does not apply to the instant case.[31] The Court acknowledges that *Shinn* requires the Court to turn a blind eye to newly discovered DNA evidence revealing that the blood found on the shoe police recovered from the State's key witness—Arthur Darby—belonged to victim Greg Vickers. The DNA evidence severely calls into question Arthur Darby's version of events and his testimony that he stayed in the car during the shooting while Petitioner murdered the victims. Under *Shinn*, this Court cannot consider the DNA evidence because it was not presented to the state courts, even though that failure was due to the constitutionally ineffective assistance of Petitioner's counsel both during trial and during the state-post-conviction proceedings. This case highlights the warning of the *Shinn* dissenters that the majority opinion would allow a man whose trial attorney "did not provide even the bare minimum level of representation required by the Constitution" to be executed "because forces outside of [his] control prevented [him] from vindicating [his] constitutional right to counsel."[32] Such a result is perverse and contrary to the protections afforded to criminal defendants under the Sixth Amendment.

Nevertheless, the Court's May 20, 2022 Order included an alternative ground for habeas relief in this case. The Court granted relief on two separate and discrete issues—the exhausted ineffective assistance claim based on counsel's failure to impeach Darby with available evidence and the unexhausted ineffective assistance of counsel claim based on the failure to conduct the

---

[31] Petitioner likely could not meet the stringent requirements of § 2254(e)(2) because it does not appear that he could establish that the DNA testing results could not have been previously discovered through the exercise of due diligence.

[32] *Shinn*, 2022 WL 1611786, at *21 (Sotomayor, J., dissenting).

8

DNA testing. *Shinn* does not impact the Court's ruling on the exhausted ineffective assistance of counsel claim. The State does not dispute this point or make any argument challenging the Court's ruling on the exhausted ineffective assistance of counsel claim, except to suggest that the Court improperly expanded the state court record when it noted that the State made apparent concessions in these federal proceedings that particular shoes were worn by the three suspects. This argument is confounding and a complete misrepresentation of the state court record. The statements by the State that certain shoes belonged to certain suspects were made both in the state post-conviction proceedings and these federal proceedings.[33] Additionally, the Jefferson Parish Sheriff's Office crime lab notes and chain-of-custody forms detailing which evidence was recovered from which suspect were part of the state record.

As explained in detail in the May 22, 2022 Order and Reasons, the state court's denial of relief on the exhausted ineffective assistance of counsel claim was contrary to, or an unreasonable application of, clearly established federal law. The state trial court found that counsel's decisions were "strategic choices" that could not have affected the verdict because Petitioner "was involved in the commission of the offense along with his co-defendants including attempting to kill police officers with a high[-]powered assault rifle while fleeing the scene" and the "conviction would remain unchanged when considered in light of his role as a principal."[34]

The only evidence supporting the State's theory that both Petitioner and Zannie Neal entered the house was the testimony of Arthur Darby.[35] Arthur Darby's testimony was also the

---

[33] *See supra* notes 8, 9, 10.

[34] *Id.*

[35] State Rec., Vol. VI of XXXIII, Feb. 26, 1999 Trial Transcript at p. 214.

primary evidence presented to establish that Petitioner was the shooter.[36] The defense's position was that Darby murdered the victims and then falsely implicated Petitioner to avoid the death penalty.[37] Claudette Hurst—the only eyewitness who testified at Petitioner's trial—testified that she saw one perpetrator who she described as tall, thin, and dressed in black clothing.[38] As the Louisiana Supreme Court recognized on direct appeal, the defense pointed to the following testimony to support Petitioner's claim that he remained in the car while Zannie Neal or Arthur Darby entered the house and killed the victims:

> (1) Claudette Hurst described the shooter as a tall, thin person dressed in black clothing; (2) a deputy sheriff stated that when arrested [Petitioner] was wearing "a light brown pair of khaki pants"; and (3) Darby admitted wearing a black sweater and blue jeans the night of the murder, described himself as "rather thin," and acknowledged that [Petitioner] was not "skinny" or "thin."[39]

The Louisiana Supreme Court rejected Petitioner's argument that the evidence was insufficient to prove his identity as the perpetrator, reasoning that "the jury heard Hurst's description of the offender and the witnesses' testimony regarding the defendant's and Darby's clothing and physique, but, nevertheless, accepted Darby's testimony implicating the defendant."[40]

Evidence that would have impeached Darby's credibility and called into question his version of events was clearly material to the defense. The State's theory that both Petitioner and

---

[36] *Neal*, 2000-0674 at p. 10; 796 So. 2d at 657–58 ("[T]he primary evidence that the defendant was the shooter is the trial testimony of the defendant's uncle, Arthur Darby.")

[37] *Id.* ("The defendant alleges that Darby murdered the victims and then falsely implicated the defendant to avoid the death penalty; in support, the defendant notes that Darby admitted on cross-examination that he would 'do anything and say anything' to avoid the death penalty.").

[38] State Rec., Vol. VI of XXXIII, Feb. 26, 1999 Trial Transcript at pp. 85, 106–07.

[39] *Neal*, 2000-0674 at p. 11; 796 So. 2d at 658.

[40] *Id.*

Zannie Neal entered the house was supported only by the testimony of Arthur Darby. By contrast, Claudette Hurst testified that she only saw one intruder—an individual matching the physical description of Arthur Darby. Evidence that Zannie Neal left the bloody shoeprint found at the scene would have been relevant to the defense's theory that Petitioner remained in the car and did not shoot the victims.[41]

Similarly, the serology report could have been used to impeach Arthur Darby's testimony. At trial, Darby stated that he waited in the car while Petitioner and Zannie Neal went inside the house.[42] Evidence regarding the possible presence of blood on Darby's shoe would have damaged his credibility and strengthened the defense's argument that Darby was responsible for the shooting. Evidence that Darby had blood on his shoe was favorable to the defense because it would have contradicted Darby's testimony at trial that he remained in the car the entire time.[43] In addition, defense counsel failed to impeach Darby with the February 22, 1999 statement he gave to the police, wherein Darby stated that he did not see a gun when Petitioner exited the vehicle.

The state trial court found that the decision not to use this evidence was a sound trial strategy.[44] However, a finding that counsel's decision was a reasonable trial strategy is contradicted by the statements of Petitioner's trial counsel himself. Ralph Barnett admitted that there was no strategy behind his decision not to use the reports to impeach Arthur Darby. In an

---

[41] *Id.*

[42] State Rec., Vol. VI of XXXIII, Feb. 26, 1999 Trial Transcript at p. 214.

[43] The December 8, 1998 Report notes the "possible presence of blood." Rec. Doc. 211-1 at 2. In the state post-conviction proceedings, the affidavit of Ron Singer confirmed that blood was in fact present on Arthur Darby's shoes. Rec. Doc. 4-1 at 94. The affidavit was presented to the state courts in the post-conviction proceedings.

[44] State Rec., Vol. XX of XXXIII, Order Denying Application for Post-Conviction Relief at p. 4, Oct. 9, 2013.

August 16, 2011 declaration, which was submitted to the state courts during the post-conviction proceedings, Mr. Barnett stated that he "did not review the physical or forensic evidence in the case," and he "did not use any experts in preparation for trial."[45] Mr. Barnett also stated that he did not recall receiving the shoeprint analysis report or the serology report before trial, but if he had received them, he "would have used them at trial to undermine the prosecution's case against Jarrell."[46]

Courts should defer "to counsel's judgment about the presentation and questioning of witnesses when such choices are the result of a 'conscious and informed decision on trial tactics.'"[47] "At the same time, however, courts are 'not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all.'"[48] "[C]ourts may not indulge 'post hoc rationalization' for counsel's decisionmaking that contradicts the available evidence of counsel's actions . . . ."[49] Considering Mr. Barnett's statements, the state trial court's finding that the failure to use these reports was the result of some "strategy" is unreasonable on this record.

The state court record shows that Mr. Barnett did little to prepare in advance for this trial.

---

[45] Rec. Doc. 4-1 at 67.

[46] *Id.* at 68.

[47] *Pape v. Thaler*, 645 F.3d 281, 291 (5th Cir. 2011) (quoting *Cotton v. Cockrell*, 343 F.3d 746, 752–53 (5th Cir. 2003)).

[48] *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (quoting *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999)).

[49] *Harrington v. Richter*, 562 U.S. 86, 109 (2011) (internal citations omitted).

He did not consult with an investigator, mitigation specialist, or any experts.[50] He waived co-counsel, even after the trial judge offered to appoint a second chair through the Indigent Defender's office.[51] Mr. Barnett waived an opening statement,[52] and rested the defense without presenting any evidence.[53] Mr. Barnett's declaration, which was properly submitted in the state court post-conviction proceedings, is consistent with Mr. Barnett's overall failure to prepare for the guilt phase of Petitioner's case. The record establishes that Mr. Barnett's failure to use these reports was not the result of any trial strategy. Therefore, the state trial court's determination that the decisions not to use this evidence or to consult any experts regarding the shoeprint analysis and serology report were trial strategies was unsupported by the record and unreasonable in light of the evidence before the trial court. Because there is no "reasonable argument that [Mr. Barnett] satisfied *Strickland*'s deferential standard" of adequate performance, Mr. Barnett's performance was deficient and the state court's determination to the contrary was an unreasonable application of *Strickland*.[54]

Petitioner must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[55] The state trial court found that defense counsel's failure to present the shoeprint analysis report

---

[50] Rec. Doc. 4-1 at 67.

[51] State Rec., Vol. I of XXXIII, Feb. 23, 1999 Trial Transcript at p. 11.

[52] State Rec., Vol. V of XXXIII, Feb. 25, 1999 Trial Transcript at p. 28.

[53] State Rec., Vol. VI of XXXIII, Feb. 27, 1999 Trial Transcript at p. 95.

[54] *Hughes v. Vannoy*, 7 F.4th 380, 390 (5th Cir. 2021) (quoting *Richter*, 562 U.S. at 105).

[55] *Strickland*, 466 U.S. at 694.

and serology report was not prejudicial because Petitioner's conviction would remain unchanged when considered in light of his role as a principal.[56] Nevertheless, the law does not require that the evidence be exculpatory or completely absolve the petitioner of any criminal wrongdoing.

There is a reasonable probability that but for this error, the result of the proceeding would have been different. Petitioner could not have been convicted of first-degree murder without evidence establishing *his* requisite mental state—that Petitioner had the specific intent to kill the victims. The testimony of Arthur Darby was the only evidence establishing that Petitioner entered the house with the specific intent to kill the victims. The jury heard testimony from Hurst, indicating that the shooter did not match the physical description of Petitioner, "but, nevertheless, accepted Darby's testimony implicating [Petitioner]."[57] This credibility determination was within the purview of the jury. However, defense counsel failed to inform the jury of key information calling into question Darby's version of the events. Given the importance of Darby's testimony to the State's case and the value of the impeachment evidence, no fairminded jurist could conclude that the failure to impeach Darby's testimony with evidence showing the presence of blood on Darby's shoe would not have "undermine[d] confidence in the outcome."[58]

The Supreme Court has recognized that the right to effective assistance of counsel is "a bedrock principle" that constitutes the very "foundation for our adversary system" of criminal justice.[59] The facts of this case illustrate a breakdown of the adversarial system caused by

---

[56] State Rec., Vol. XX of XXXIII, Order Denying Application for Post-Conviction Relief at p. 4, Oct. 9, 2013.

[57] *Neal*, 2000-0674 at p. 13; 796 So. 2d at 658.

[58] *See Hughes*, 7 F.4th at 392 (quoting *Strickland*, 466 U.S. at 694).

[59] *Martinez*, 566 U.S. at 12.

ineffective assistance of counsel in violation of Petitioner's Sixth Amendment right. Although the Court's ability to consider compelling, newly discovered DNA evidence has been hamstrung by an intervening Supreme Court ruling, the state court record standing alone demonstrates that Petitioner was denied effective assistance of counsel. A conviction cannot stand if it results "specifically and directly from the consequences of [the denial of] the right to effective counsel in violation of . . . the Sixth Amendment to the United States Constitution."[60] Accordingly, for the reasons stated above, under the facts and circumstances of the instant case, the law and justice require relief.

**IT IS HEREBY ORDERED** that the State shall set aside Petitioner's conviction and sentence. The State must release Petitioner from custody unless the State grants Petitioner a new trial within 120 days from the date of the May 20, 2022 Judgment.

**NEW ORLEANS, LOUISIANA,** this  10th   day of June, 2022.

**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[60] *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004).