## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JARRELL NEAL** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 15-5390** |
| **DARREL VANNOY, WARDEN** | **SECTION: "G"(3)** |

## ORDER AND REASONS

On May 20, 2022, this Court granted a petition for a writ of habeas corpus filed by Petitioner Jarrell Neal ("Petitioner") based on the denial of his Sixth and Fourteenth Amendment right to the effective assistance of counsel, pursuant to an exhausted claim and, alternatively, pursuant to a procedurally barred claim excused by post-conviction counsel's ineffective assistance under the Supreme Court's holding in *Martinez v. Ryan*.[1] On May 23, 2022, the Supreme Court issued an opinion in *Shinn v. Ramirez*, holding that federal courts cannot consider new evidence in evaluating a claim under *Martinez* unless the stringent requirements of 28 U.S.C. § 2254(e)(2) are met.[2] Considering that Petitioner relied on new DNA evidence to support his *Martinez* claim and that neither party had ever raised the application of § 2254(e)(2) to the *Martinez* claim, the Court invited the parties to submit supplemental briefing on *Shinn*'s impact on the judgment in this case.[3] After reviewing both parties' supplemental briefs, the Court issued a supplemental order on June 10, 2022, confirming its original order and judgment granting relief

---

[1] *See* Rec. Doc. 227 (citing *Martinez v. Ryan*, 566 U.S. 1 (2012)).

[2] *Shinn v. Ramirez*, No. 20-1009, 2022 WL 1611786, at *3 (U.S. May 23, 2022).

[3] Rec. Doc. 229.

based on the exhausted ineffective assistance of counsel claim.[4]  Therefore, the Court ordered the State to set aside Petitioner's conviction and either release or retry him within 120 days from the date of the May 20, 2022 Judgment.[5]

On June 16, 2022, the State filed a notice of appeal.[6]  The same day, the State also filed the instant Motion for Stay of Judgment and Release Order Pending Appeal.[7]  Petitioner opposes the motion.[8]  Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion.

## I. Background

In 2016, Petitioner, a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 from his conviction for two counts of first-degree murder and the sentence of death on each count.[9] Petitioner was convicted of murdering Greg Vickers and Fergus Robinson on March 31, 1998 at the home of Claudette Hurst in Metairie, Louisiana. The primary issue at Petitioner's trial was his identity as the shooter. Considering that Petitioner, his half-brother Zannie Neal, and his uncle Arthur Darby were apprehended by the police as they fled the scene, there was little dispute that the trio were involved in the commission of the offense and were each culpable to some extent.

---

[4] *See* Rec. Doc. 232.

[5] *Id.*; Rec. Doc. 228.

[6] Rec. Doc. 233.

[7] Rec. Doc. 234.

[8] Rec. Doc. 239.

[9] Rec. Doc. 4.

The defense sought to persuade the jury that Petitioner was the least culpable because he stayed in the car while his brother and uncle murdered the victims, whereas the State relied on the testimony of cooperating witness, Arthur Darby, to show that Petitioner was the shooter and thus the most culpable. In fact, the State's theory rested almost entirely on Darby's testimony, as Claudette Hurst, the only eyewitness to testify at Petitioner's trial, described the shooter as someone who seemed to match a physical description of Arthur Darby rather than Petitioner.[10] As the Louisiana Supreme Court recognized on direct appeal, the jury's assessment of Arthur Darby's credibility was critical to the State's case.[11]

Despite the importance of Arthur Darby's testimony, it went largely unchallenged by defense counsel. Specifically, three pieces of evidence with clear impeachment value were not used to impeach Darby, nor were they offered into evidence during Petitioner's trial at all: (1) a serology report indicating the possible presence of blood on the shoes the Jefferson Parish Sheriff's Office collected from Arthur Darby on the night of the murder[12] (the "serology report"); (2) a forensic report showing that Petitioner's shoes[13] were excluded as the source of the bloody

---

[10] *See State v. Neal*, 2000-0674, p. 10–12 (La. 6/29/01); 796 So. 2d 649, 658.

[11] *Id.* ("In the instant case, the jury heard Hurst's description of the offender and the witnesses' testimony regarding the defendant's and Darby's clothing and physique, but, nevertheless, accepted Darby's testimony implicating the defendant. The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing court may impinge on the 'fact finder's discretion only to the extent necessary to guarantee the fundamental due process of law.'").

[12] The Jefferson Parish Sheriff's Office chain of custody form indicated that item 13 was one "pair Black 'Nike Air' no size from subject Darby at CHNO." Rec. Doc. 137-1 at 4 (March 31, 1998 Chain of Custody Form). During the long history of this litigation, the State has repeatedly conceded that Arthur Darby's shoes were identified as item 13. *See, e.g.*, Rec. Doc. 12 at 14. The State also referred to item 13 as Arthur Darby's shoes during the state post-conviction proceedings. *See* State Rec., Vol. XVII of XXXIII, State's Memorandum in Opposition at 4, Oct. 15, 2012 ("[T]he same report documents the possible presence of blood on specimen #13. These are Darby's shoes.").

[13] The Jefferson Parish Sheriff's Office chain of custody form indicated that item 78 were two "black shoes, unk[nown] brand [and] size. Received from Det. M. Moscona, at 725 Maple Av. Harvey, La." Rec. Doc. 137-1 at 12 (April 2, 1998 Chain of Custody Form). The Jefferson Parish Sheriff's Office crime lab notes refer to item 78 in more

shoeprint found at the scene, whereas Zannie Neal's shoes[14] could not be excluded as the source

(the "shoeprint analysis report"); and (3) an inconsistent prior statement of Darby from February

22, 1999, wherein Darby told the police that Petitioner did not have a gun when he exited the

vehicle (the "February 22, 1999 statement"). Petitioner primarily argued that the State violated

*Brady v. Maryland*[15] by failing to disclose this evidence to the defense before trial.[16]

Alternatively, if the evidence was disclosed to the defense, Petitioner asserted that his counsel was

constitutionally ineffective under *Strickland v. Washington*[17] by failing to offer the evidence in

his defense.[18]

On May 20, 2022, the Court issued an Order and Reasons ruling on Petitioner's *Brady* and

ineffective assistance of counsel claims. The Court ruled on three discrete issues: (1) the Court

---

detail as "one pair of black HONCHOS – Steel Toe work shoes from (Neal, Jarrell)." *Id.* at 19 (April 25, 1998 Crime Lab Report). During the long history of this litigation, the State has repeatedly conceded that Petitioner's shoes were identified as item 78. *See, e.g.*, Rec. Doc. 12 at 15. The State also referred to item 78 as Petitioner's shoes during the state post-conviction proceedings. *See* State Rec., Vol. XVII of XXXIII, State's Memorandum in Opposition at 4, Oct. 15, 2012 ("Specimen #78 is the pair of boots the defendant was wearing.").

[14] The Jefferson Parish Sheriff's Office chain of custody form indicated that item 27 was one "pair black Nike tennis shoes from sub Neal, Zannie." Rec. Doc. 137-1 at 5 (March 31, 1998 Chain of Custody Form). During the long history of this litigation, the State has repeatedly conceded that Zannie Neal's shoes were identified as item 27. *See, e.g.*, Rec. Doc. 12 at 14. The State also referred to item 27 as Zannie Neal's shoes during the state post-conviction proceedings. *See* State Rec., Vol. XVII of XXXIII, State's Memorandum in Opposition at 5, Oct. 15, 2012 ("This relates to a bloody shoe print found on the scene and that Zannie Neal could not be excluded as the source of this shoe print.").

[15] 373 U.S. 83 (1963).

[16] Rec. Doc. 4 at 22–47.

[17] 466 U.S. 668 (1984).

[18] Rec. Doc. 4 at 24 ("Indeed, Arthur Darby's testimony was the only evidence that identified Jarrell Neal as the person who allegedly, with a[n AK-47] in hand, entered the scene of the crime, and, with specific intent, killed the victims. However, due to a combination of *Brady* violations, *Napue* violations, and the ineffectiveness of trial counsel, the jury rendered its verdicts without hearing critical evidence that Arthur Darby lacked credibility and that his self-interested testimony was plainly unreliable evidence."); *Id.* at 29 ("This blood evidence is, therefore, critical exculpatory and impeachment evidence, and defense counsel was ineffective in failing to test and present this evidence at Jarrell Neal's trial.").

4

held that Petitioner was not entitled to habeas relief on his exhausted *Brady* claim because he failed to present evidence to overcome the state court's factual finding that the serology report, the shoeprint analysis report, and the February 22, 1999 statement of Arthur Darby were disclosed to the defense; (2) the Court held that Petitioner was entitled to habeas relief on his exhausted ineffective assistance of counsel claim based on trial counsel's failure to review the forensic evidence and his failure to impeach the State's key witness—Arthur Darby—with the serology report, the shoeprint analysis report, and the February 22, 1999 statement; and (3) the Court held that Petitioner was entitled to habeas relief on the procedurally defaulted ineffective assistance of counsel claim under the Supreme Court's holding in *Martinez v. Ryan*[19] because both trial counsel and state post-conviction counsel were ineffective for failing to conduct DNA testing on the shoe recovered from Arthur Darby, which revealed that it was "approximately 100 quintillion times more likely [to have originated from victim] Greg Vickers than if the DNA originated from an unknown individual."[20]

Three days later, the Supreme Court decided *Shinn v. Ramirez*, holding that federal courts cannot consider new evidence in evaluating a claim under *Martinez* unless the stringent requirements of 28 U.S.C. § 2254(e)(2) are met.[21] The Supreme Court held that "under

---

[19] *Martinez*, 566 U.S. at 1.

[20] *See* Rec. Doc. 227.

[21] *Shinn*, 2022 WL 1611786, at *3. Under § 2254(e)(2):

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
(A) the claim relies on—
    (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

§ 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel."[22]  The Court reasoned that "under § 2254(e)(2), a prisoner is 'at fault' even when state postconviction counsel is negligent [and so] a federal court may order an evidentiary hearing or otherwise expand the state-court record only if the prisoner can satisfy § 2254(e)(2)'s stringent requirements."[23]  In other words, "when a federal habeas court convenes an evidentiary hearing for any purpose, or otherwise admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied."[24]  The Supreme Court also observed that "even if a prisoner overcomes all of these limits, he is never entitled to habeas relief. He must still 'persuade a federal habeas court that law and justice require [it].'"[25]

Considering that Petitioner relied on new DNA evidence to support his *Martinez* claim and that neither party had ever raised the application of § 2254(e)(2) to the *Martinez* claim, the Court invited the parties to submit supplemental briefing on *Shinn*'s impact on the judgment in this case.[26]  The State submitted a supplemental brief on May 31, 2022.[27]  On June 7, 2022, Petitioner

---

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

[22] *Shinn*, 2022 WL 1611786, at *9.

[23] *Id.* at *10.

[24] *Id.* at *12.

[25] *Id.* at *6 (quoting *Brown v. Davenport*, 142 S. Ct. 1510, 1520 (2022)).

[26] Rec. Doc. 229.

[27] Rec. Doc. 230.

submitted a supplemental brief.[28]  The Court issued a supplemental order on June 10, 2022, confirming its original order and judgment granting relief based on the exhausted ineffective assistance of counsel claim.[29]  Therefore, the Court ordered the State to set aside Petitioner's conviction and either release or retry him within 120 days from the date of the May 20, 2022 Judgment.[30]

On June 16, 2022, the State filed a notice of appeal.[31]  The same day, the State also filed the instant Motion for Stay of Judgment and Release Order Pending Appeal.[32]  Petitioner opposes the motion.[33]  On July 25, 2022, with leave of Court, the State filed a reply and Petitioner filed a sur-reply.

## II. Parties' Arguments

### A.    The State's Arguments in Support of the Motion

The State moves the Court to stay its judgment pending appeal.[34]  The State cites the four-factor test set forth by the Supreme Court in *Hilton v. Braunskill*.[35]  The State argues that all four factors are met in this case: (1) the State has made a strong showing that it is likely to succeed on the merits of the appeal; (2) the State will be irreparably injured absent a stay; (3) the stay will not

---

[28] Rec. Doc. 231.

[29] *See* Rec. Doc. 232.

[30] *Id.*; Rec. Doc. 228.

[31] Rec. Doc. 233.

[32] Rec. Doc. 234.

[33] Rec. Doc. 239.

[34] Rec. Doc. 234.

[35] Rec. Doc. 234-1 at 7 (citing *Hilton v. Braunskill*, 581 U.S. 770, 776 (1987)).

substantially injure Petitioner; and (4) the public interest supports a stay.[36]

First, the State argues that it has made a strong showing that it is likely to succeed on the merits of the appeal.[37] According to the State, this Court applied the wrong standard of review to the state post-conviction court's finding of trial strategy.[38] Specifically, the State asserts that the state court's finding on trial strategy was a purely factual finding, which should have been reviewed under 28 U.S.C. § 2254(e)(1)'s "clear and convincing evidence" standard, rather than Section 2254(d)(1)'s unreasonable application of federal law standard.[39] The State also argues that the Court impermissibly reviewed the state court record *de novo* and substituted its own opinion for that of the state court.[40]

Second, the State asserts that it has "a substantial interest in staying the release of an individual who has been convicted of two counts of first degree murder and was sentenced to death on each count."[41] The State submits that Petitioner should remain incarcerated given the danger he would pose to the public if released.[42]

Third, the State argues that Petitioner has a substantial incentive to flee if released.[43] The State points out that Petitioner demonstrated his willingness to evade apprehension by firing at

---

[36] *Id.*

[37] *Id.* at 8–11.

[38] *Id.* at 8–9.

[39] *Id.*

[40] *Id.* at 10–11.

[41] *Id.* at 12.

[42] *Id.*

[43] *Id.* at 13.

deputies who pursued the vehicle.[44] Finally, for these same reasons the State submits that the public interest favors keeping Petitioner in custody.[45]

**B.    *Petitioner's Arguments in Opposition to the Motion***

In opposition, Petitioner argues that the Court should deny the motion and require the State to bring him to retrial in state court or release him from custody.[46]  Alternatively, Petitioner asserts that this Court should release him from custody and hold the retrial condition in abeyance pending an appeal.[47]

Petitioner asserts that the State has not demonstrated that it is likely to succeed on appeal.[48] Petitioner notes that the State never argued that Section 2254(e)(1) applied to the state court's finding of trial strategy, and therefore, Petitioner asserts that this argument was waived.[49] Additionally, Petitioner cites Fifth Circuit caselaw applying the Section 2254(d)(1) standard to the reasonableness of a trial strategy.[50] Alternatively, Petitioner argues that the state court's finding that trial counsel's omissions were strategic was rebutted by clear and convincing evidence.[51] Specifically, Petitioner points out that the only evidence presented was the declaration of trial

---

[44] *Id.*

[45] *Id.*

[46] Rec. Doc. 239 at 2.

[47] *Id.*

[48] *Id.* at 4.

[49] *Id.*

[50] *Id.* at 7 (citing *Wardrip v. Lumpkin*, 976 F.3d 467, 477 (5th Cir. 2020); *Morales v. Thaler*, 714 F.3d 295, 302–03 (5th Cir. 2013)).

[51] *Id.* at 5.

counsel himself wherein he stated that he could not recall receiving the evidence but would have used it if he had.[52] Petitioner also asserts that the Court's orders addressing these claims are far from perfunctory, as they span 151 pages.[53]

Next, Petitioner argues that the other factors do not support a stay.[54] Petitioner points out that the State does not allege an irreparable injury beyond emphasizing the nature of the offense.[55] Additionally, Petitioner asserts that "[t]he public interest would be furthered by a constitutional conviction and sentence, as opposed to a drawn-out and costly process in which Petitioner is kept in custody on an unconstitutional conviction and sentence while the State attempts an appeal."[56] Petitioner asserts that he has a near-perfect disciplinary record at Angola, receiving a single disciplinary write-up for a non-violent infraction in 2011.[57] He received his GED in 2013, has completed every class offered on death row, consistently ranks in the lowest risk category on his annual offender assessment, and serves as a barber for the entirety of the population on death row.[58] Petitioner argues that he "has a substantial interest in a timely resolution of this case, whether through retrial or a plea."[59]

Alternatively, Petitioner asserts that this Court should release him from custody and hold

---

[52] *Id.*

[53] *Id.*

[54] *Id.* at 11–15.

[55] *Id.* at 12.

[56] *Id.*

[57] *Id.* at 13.

[58] *Id.*

[59] *Id.* at 14.

the retrial condition in abeyance pending an appeal.[60]  Petitioner points out that he has maintained

an extraordinarily close relationship with his parents and family.[61]  Petitioner asserts that he should

be allowed to reside with his aunts and parents in Luling, Louisiana, pending appeal.[62]

**C.      *The State's Arguments in Further Support of the Motion***

In reply, the State argues that the Court lacks authority to grant Petitioner's alternative

request for release pending appeal because such relief would be a modification of the Court's

initial order.[63]

**D.      *Petitioner's Arguments in Further Opposition to the Motion***

In the sur-reply brief, Petitioner argues that this Court does have authority to release him

pending appeal.[64]  In support, Petitioner cites several district court cases ordering such relief

pending an appeal by the State.[65]

## III. Legal Standard

Federal Rule of Appellate Procedure 23(c) provides that "[w]hile a decision ordering the

release of a prisoner [in a habeas corpus proceeding] is under review, the prisoner must—unless

the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge

or justice of either court orders otherwise—be released on personal recognizance, with or without

---

[60] *Id.* at 15–16.

[61] *Id.* at 15.

[62] *Id.* at 16.

[63] Rec. Doc. 244-2 at 2.

[64] Rec. Doc. 243-2 at 1–2.

[65] *Id.* at 2.

surety."[66] Rule 23(c) "creates a rebuttable presumption that a prisoner who has received habeas relief will be released pending appeal."[67] "In *Hilton v. Braunskill*, the Supreme Court set forth the factors that a court should consider in determining whether to enlarge the prisoner or continue custody."[68] Those factors are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."[69] The Supreme Court explained:

> [I]f the State establishes that there is a risk that the prisoner will pose a danger to the public if released, the court may take that factor into consideration in determining whether or not to enlarge him. The State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal is also a factor to be considered; it will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served.[70]

## IV. Analysis

### A.     *Whether the State Has Demonstrated a Likelihood of Success on the Merits*

The State argues that it is likely to succeed on the merits of the appeal for two reasons.[71] First, the State argues that this Court applied the wrong standard of review to the state post-conviction court's finding of trial strategy.[72] Specifically, the State asserts that the state court's

---

[66] Fed. R. App. P. 23.

[67] *Woodfox v. Cain*, 305 F. App'x 179, 181 (5th Cir. 2008).

[68] *Id.* (citing *Hilton v. Braunskill*, 481 U.S. 770 (1987)).

[69] *Braunskill*, 481 U.S. at 776.

[70] *Id.* at 778.

[71] Rec. Doc. 234-1 at 8–11.

[72] *Id.*

finding on trial strategy was a purely factual finding, which should have been reviewed under 28 U.S.C. § 2254(e)(1)'s "clear and convincing evidence" standard, rather than Section 2254(d)(1)'s unreasonable application of federal law standard.[73] This argument is unavailing. As Petitioner correctly points out, the State has never argued that Section 2254(e)(1) should apply to this claim. Moreover, the Supreme Court and the Fifth Circuit have repeatedly found that ineffective assistance of counsel claims present a mixed question of law and fact, which are properly evaluated under Section 2254(d)(1).[74] Additionally, the central point of this Court's holding was that *no* evidence was ever presented to show that trial counsel made a strategic decision not to present the shoeprint analysis report and the serology report. The only evidence presented on this issue was the affidavit of trial counsel, who attested that he would have used the evidence if he had received it. Therefore, the State has not shown a strong likelihood of success on the merits as to this issue.

Second, the State argues that it has a strong likelihood of success on the merits because this Court impermissibly reviewed the state court record *de novo* and substituted its own opinion for that of the state court.[75] The Court disagrees, as it carefully examined the standards of review set forth under AEDPA as interpreted by the Supreme Court. Therefore, the State has not

---

[73] *Id.*

[74] *See Wessinger v. Vannoy*, 864 F.3d 387, 391 (5th Cir. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)); *Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010) (citing *Briseno v. Cockrell*, 274 F.3d 204, 206–08 (5th Cir. 2001)) ("Claims of ineffective assistance of counsel involve mixed questions of law and fact and are governed by § 2254(d)(1)"); *Wardrip*, 976 F.3d at 477 ("In light of the evidence presented in the state court proceeding, it was not an unreasonable determination of the facts for the state habeas court to find that [trial counsel] had conducted a reasonable investigation . . . and based on that investigation that [trial counsel] made a reasonable strategic decision regarding what evidence to present"); *Morales*, 714 F.3d at 302–03 ("The central question is whether the state courts' factual finding—that [counsel made a strategic decision]—was objectively unreasonable in light of the evidence presented in the state court proceedings").

[75] Rec. Doc. 234-1 at 10–11.

demonstrated in this motion that it is likely to succeed on the merits. Nevertheless, the Court is cognizant that ineffective assistance of counsel claims often present close questions upon which reasonable jurists could disagree. Considering that this Court's original analysis was drastically altered by the Supreme Court's subsequent holding in *Shinn*, the Court recognizes that a stay of the judgment to allow full appellate review would be prudent.

**B.     *Whether the State Will Suffer Irreparable Injury Absent a Stay***

The State asserts that it has "a substantial interest in staying the release of an individual who has been convicted of two counts of first degree murder and was sentenced to death on each count."[76] The State submits that Petitioner should remain incarcerated given the danger he would pose to the public if released.[77] Petitioner responds that the State does not allege an irreparable injury beyond emphasizing the nature of the offense.[78]

Both the Supreme Court and the Fifth Circuit have recognized that the State has a strong interest in continuing custody where there is a long period left on the prisoner's sentence.[79] Petitioner was sentenced to death in this case. Therefore, the State's interest in continuing custody should be given substantial weight.[80]

---

[76] *Id.* at 12.

[77] *Id.*

[78] Rec. Doc. 239 at 12.

[79] *Woodfox*, 305 F. App'x at 182 (citing *Hilton*, 481 U.S. at 777).

[80] *Id.*

14

### C.      *Whether a Stay Will Substantially Injure Petitioner*

The State argues that Petitioner has a substantial incentive to flee if released.[81]  The State points out that Petitioner demonstrated his willingness to evade apprehension by firing at deputies who pursued the vehicle.[82]  In response, Petitioner asserts that he has a near-perfect disciplinary record at Angola, receiving a single disciplinary write-up for a non-violent infraction in 2011.[83] He received his GED in 2013, has completed every class offered on death row, consistently ranks in the lowest risk category on his annual offender assessment, and serves as a barber for the entirety of the population on death row.[84]

As the Supreme Court and the Fifth Circuit both acknowledge, "the interest of a successful habeas petitioner in being released pending appeal is 'always substantial.'"[85]  Nevertheless, considering the seriousness of these charges, the Court agrees that Petitioner would have a strong inventive to flee. Accordingly, this factor weighs in favor of a stay and weighs against releasing Petitioner from custody pending appeal.

### D.      *Where the Public Interest Lies*

Considering the foregoing arguments regarding the seriousness of this offense, the State submits that the public interest favors keeping Petitioner in custody.[86]  Petitioner responds that

---

[81] Rec. Doc. 234-1 at 13.

[82] *Id.*

[83] Rec. Doc. 239 at 13.

[84] *Id.*

[85] *Woodfox*, 305 F. App'x at 182 (citing *Hilton*, 481 U.S. at 777).

[86] Rec. Doc. 234-1 at 13.

"[t]he public interest would be furthered by a constitutional conviction and sentence, as opposed to a drawn-out and costly process in which Petitioner is kept in custody on an unconstitutional conviction and sentence while the State attempts an appeal."[87] Considering the seriousness of the charges, the Court agrees with the State that this factor weighs in favor of a stay and weighs against releasing Petitioner from custody pending appeal.

## V. Conclusion

For the reasons discussed above, the State has not provided compelling briefing to show a substantial case on the merits of the pending appeal. Nevertheless, the Court is cognizant that ineffective assistance of counsel claims often present close questions upon which reasonable jurists could disagree. Considering that this Court's original analysis was drastically altered by the Supreme Court's subsequent holding in *Shinn*, the Court recognizes that a stay of the judgment to allow full appellate review would be prudent. Moreover, the remaining factors weigh in favor of a stay and against release. Accordingly,

**IT IS HEREBY ORDERED** that the State's Motion for Stay of Judgment and Release Order Pending Appeal[88]  is **GRANTED**.

**NEW ORLEANS, LOUISIANA,** this   27th  day of July, 2022.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[87] Rec. Doc. 239 at 12.

[88] Rec. Doc. 234.

16